UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| UNITED STATES OF AMERICA<br><br>v.<br><br>SHAQUILLE RICHARDSON | Crim. No. 3:17cr130 (MPS)<br><br><br><br>July 9, 2018 |
|---|---|

**GOVERNMENT'S SENTENCING MEMORANDUM**

The Government respectfully submits this sentencing memorandum in connection with defendant Shaquille Richardson's sentencing hearing scheduled for July 17, 2018. For the reasons detailed below, the Government requests that the Court adopt the findings of fact in the Presentence Report ("PSR") and impose a sentence at the high end of the guidelines range of 110 to 123 months. A sentence of 123 months is sufficient, but not greater than necessary to reflect the purposes of a criminal sanction as set forth in 18 U.S.C. § 3553(a).

I.   **BACKGROUND**

   A.   **Procedural History**

On June 13, 2017, a grand jury in New Haven returned an Indictment charging Shaquille Richardson and his co-defendant Thomas Johnson with Hobbs Act robbery in violation of 18 U.S.C. § 1951 (Count One) and carrying a firearm during and in relation to a crime of violence in violation of § 924(c)(1)(A) (Count Two). Johnson was also charged in a third count with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 924(g)(1) and 924(a)(2). Richardson has been detained since his arrest on November 23, 2016 on state charges. On January 31, 2008, Richardson pled guilty pursuant to a written plea agreement to both Counts

One and Two of the Indictment.   *See* Docket Entry No. 47.[1]

The parties agreed that Count Two of the Indictment carried a mandatory consecutive term of imprisonment of 60 months.  PSR ¶ 4.  The parties further agreed that Richardson's base offense level was 20 under USSG § 2B3.1.  *Id.*  Four additional levels were added because the victims sustained bodily injury as a result of Richardson's offense conduct pursuant to USSG § 2B3.1(b)(3)(B) and one additional level was added pursuant to USSG § 2B3.1(b)(6) because the taking of a controlled substance was the object of the offense.  *Id.*  This resulted in an adjusted offense level of 25, which after three levels were deducted for acceptance of responsibility, became 22.  *Id.*

In the plea agreement, the parties further agreed that Richardson fell within Criminal History Category III; a total offense level of 22 when combined with Criminal History Category III resulted in a guidelines imprisonment range of 51 to 63 months.  *See* PSR ¶ 5.  When the consecutive mandatory minimum prison sentence of 60 months was added, Richardson's guidelines imprisonment range increased to 111 to 123 months, with a fine range of $15,000 to $250,000 and a supervised release term of one to three years.  *Id.*  The parties further agreed that neither a downward nor upward departure from the guidelines sentencing range was warranted and that a sentence within the agreed upon range was reasonable.  *Id.* ¶ 6.  Finally, Richardson agreed that he would not appeal or collaterally attack any sentence imposed by the Court if the sentence did not exceed 123 months of imprisonment, a three-year term of supervised release, a $200 special assessment and a fine of $250,000.  *Id* ¶ 7.[2]

---

1 Thomas Johnson, Richardson's co-defendant, has also pled guilty and his sentencing has been scheduled for September 11, 2018.
2 Richardson additionally agreed to forfeit his interest in the firearm charged in Count Two of the Indictment and all related ammunition seized with the firearm. PSR ¶ 7.

Although Richardson has not received any disciplinary tickets at the Donald W. Wyatt Detention Facility, where he has been detained since March 15, 2018, he did receive a number of disciplinary tickets while detained at the Connecticut Department of Correction from November 23, 2016 through March 14, 2018, which are outlined in the PSR.  These tickets included charges for possessing contraband, security tampering and SRG affiliation.  *Id.* ¶ 9.

**B.    Underlying Facts**

Had the case proceeded to trial, the Government would have proven beyond a reasonable doubt that Richardson committed Hobbs Act robbery on June 30, 2016, that he possessed a firearm in furtherance of that robbery and that the firearm was used to pistol whip one victim and shoot the second victim.  The underlying offense conduct is laid out in detail in the PSR and is only summarized herein for reference.

On June 30, 2016, at approximately 1:41 a.m., police were dispatched to an area near Ferry and Poplar Streets in New Haven where they found two victims of a robbery—Jose Vasquez a.k.a. "Little" and Noel Figueroa a.k.a "Bolo."  Vasquez had been shot in the left elbow and Figueroa was bleeding from the face from where he had been punched and pistol-whipped.  Vasquez and Figueroa provided a general description to the police officers of two black males (one of whom was taller than the other) who had robbed them with a silver handgun.

Vasquez and Figueroa had gone into a store to buy rolling papers so that they could smoke a joint.  According to Figueroa, he and Vasquez were walking on Poplar Street after exiting the store when two black males, armed with a firearm, approached them to rob them. Figueroa said that both men demanded his and Vasquez's belongings. In an attempt to prevent

the robbery, Figueroa was able to grab his red "flip" knife, and stab the taller robber (Richardson) in the right hand. During the robbery, he lost his keys, his red and black knife and a cellular telephone.

Figueroa said that he was struck in the face with the firearm by a black male, approximately 5'8 (the taller of the two robbers) with a thin muscular build, who was twenty to twenty-five years old, wearing a black hoodie and with shoulder length blond and black braids (Richardson). Figueroa's pistol whipping was severe enough to require twelve stiches in his nose and follow-up surgery. After he was hit in the face, Figueroa saw the first robber hand the firearm to the second black male who he described as approximately 5'6 and skinny with a muscular build, green or grey hoodie and short cut hair (Johnson). Figueroa also saw Vasquez being beaten up by the two men and then he saw Johnson draw out a handgun and begin to shoot at Vasquez and himself. Figueroa managed to run away and as he was running away, he heard approximately twelve gunshots.

Jose Vasquez also described going to the store and said that when he left the store, the two men who later robbed him followed him and asked him if he had some "weed" for sale. Vasquez responded "no," and the same suspects asked him again the same question. This time when he responded "no," one of the robbers pulled out a gun. According to Vasquez, Figueroa became scared and when the robbers saw that Figueroa was scared, one of them hit him with the firearm and broke his nose. Vasquez stated that the tall robber with dreads (Richardson) took his (Vasquez's) cellular phone, Identification and Social Security card and approximately $100 in cash. Vasquez also described how he was shot in his left elbow. Vasquez attempted to block his face from the firearm with his arm, and later lost two pints of blood as a result of a gunshot wound to his arm. Vasquez identified the smaller robber (Johnson) as the person who had shot

him. He also stated that the one he was fighting with had braids but had a "hoodie" on. When Vasquez was at the hospital, he observed one of the suspects who he described as having "small braids." Richardson was at the hospital at the same time as him. When asked which suspect he was better able to observe, Vasquez said it was the shorter one with the firearm (Johnson). He was able to identify Johnson from a photo array, but was not able to identify Richardson.[3]

At the scene of the crime, New Haven Police Department ("NHPD") officers observed a male walking in the northbound direction through the rear yard of a house on Poplar Street wearing a dark colored hooded sweatshirt with a braided hairstyle. This individual matched the description of one of the robbers so an NHPD officer followed him and found him in a fetal position on the ground. The man was identified as Shaquille Richardson and he was bleeding from his right hand from what appeared to be a deep laceration of some sort. Richardson was not arrested at the time and was released from the hospital. Meanwhile, NHPD Bureau of Identification Detectives also collected and processed several items within the crime scene. One such item was later determined to be a .22 caliber fired cartridge casing with a "REM" head stamp. This fired cartridge casing was submitted to the State Laboratory for further ballistics testing.

Richardson's DNA was taken through a buccal swab on November 22, 2016; Figueroa's on February 17, 2017; and a search warrant was obtained for Johnson and Vasquez's DNA on February 22, 2017. Swabbing from the handle of the folding knife found at the scene, a charger wire, a lighter, Vasquez's jeans and a sweatshirt were sent to the lab. With regards to the knife found at the scene, which Figueroa said he used to fight the taller of the two robbers, the results were consistent with the DNA profile from a swabbing of the handle of the knife being a mixture

---

3 Surveillance video collected from the scene confirmed the victims' story as to what had happened.

of three contributors with at least two of them being male. Figueroa was assumed to be a contributor to the DNA profile, Vasquez and Johnson were eliminated as contributors, and the DNA profile was determined to be at least 100 billion times more likely to occur if it originated from Richardson. The swabbing from the front right pocket of Vasquez's jeans showed a mixture of five contributors. Assuming that Vasquez was one of them, the DNA profile was at least 100 billion times more likely to occur if it originated from Richardson and Vasquez and three unknown individuals than if it originated from Vasquez and four unknown individuals.

On July 28, 2016, Johnson was arrested during a motor vehicle stop. His license was expired and the plate did not belong on the vehicle. When the officer asked him to turn off his car and to hand over the keys, Johnson did not immediately do so and appeared to be reaching into his glovebox. Fearing that he was reaching for a weapon, the officer tried to stop Johnson. Johnson struck the officer with his fist several times and then fled from the scene on foot. The officers ultimately caught Johnson and when they returned to Johnson's vehicle, they discovered a Ruger Mark 3, .22 caliber pistol in the glove compartment. The gun was test fired and when tested by the State Lab, a preliminary hit indicated that the recovered fired cartridge casing located on June 30, 2016 near the scene of the aforementioned armed robbery and the test fired cartridge casing from the firearm seized during Johnson's arrest, were fired from the same firearm.   .

    **C.**    **PSR Calculations**

The Presentence Report applied the November 1, 2016 Sentencing Guidelines and concluded that the base offense level was 20 under U.S.S.G. § 2B3.1, but that level increased to 25 after four levels are added because the victims sustained serious physical injury as a result of the offense conduct and an additional level was added because the taking of a controlled

substance was an object of the offense. PSR ¶¶ 42-48. After a three-level reduction for acceptance of responsibility, the total offense level was 22. *Id.* ¶¶ 50-52.

The PSR details Richardson's prior convictions as follows: (1) possession of marijuana in 2013 (for which Richardson received one criminal history point) and (2) possession of a pistol without a permit in 2014 (for which Richardson received three criminal history points). *See* PSR ¶¶ 55-56. The PSR added two points because the instant offense was committed while Richardson was under a criminal justice sentence, specifically probation. *Id.* ¶ 57. The PSR concluded that the defendant accumulated a total of 6 criminal history points, which resulted in a criminal history category of III. *Id.* ¶ 41.

For the reasons set forth below, the Government seeks a guidelines sentence of 123 months based on the extremely serious nature of the offense conduct.

## II.  DISCUSSION

Following the Supreme Court's holding in *United States v. Booker*, 543 U.S. 220, 243-245 (2005), which rendered the Sentencing Guidelines advisory rather than mandatory, a sentencing judge is required to: "(1) calculate[] the relevant Guidelines range, including any applicable departure under the Guidelines system; (2) consider[] the Guidelines range, along with the other § 3553(a) factors; and (3) impose[] a reasonable sentence." *See United States v. Fernandez*, 443 F.3d 19, 26 (2d Cir. 2006). The § 3553(a) factors include: (1) "the nature and circumstances of the offense and history and characteristics of the defendant;" (2) the need for the sentence to serve various goals of the criminal justice system, including (a) "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment," (b) to accomplish specific and general deterrence, (c) to protect the public from the defendant, and (d) "to provide the defendant with needed educational or vocational training, medical care, or other

correctional treatment in the most effective manner"; (3) the kinds of sentences available; (4) the sentencing range set forth in the guidelines; (5) policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to victims.  *See* 18 U.S.C. § 3553(a).

The Second Circuit reviews a sentence for reasonableness. *United States v. Canova*, 412 F.3d 331, 350 (2d Cir. 2005).  The reasonableness standard is deferential and focuses "primarily on the sentencing court's compliance with its statutory obligation to consider the factors detailed in 18 U.S.C. § 3553(a)." *Id*.

This case involves an armed robbery in which both victims were seriously injured and could have been killed.  Committing an armed robbery in the middle of a pedestrian street in New Haven and then shooting at the victims also risked injuring or killing additional innocent civilians.  Here, the nature and circumstances of the offense, history and characteristics of the defendant and the need to accomplish specific and general deterrence all weigh in favor of a 123-month sentence.  *See* 18 U.S.C. § 3553(a).

### A. The Nature and Circumstance of the Offense

The first factor to consider is the nature and circumstances of the offense.  Richardson and Johnson committed an armed robbery of two individuals.  They targeted Vasquez and Figueroa looking for narcotics and/or narcotics proceeds.  In the course of the armed robbery, when Figueroa displayed fear, Richardson smashed a pistol into his head several times causing severe damage to his nose, which resulted in the need for a dozen stiches and a follow-up surgery.  Johnson fired multiple shots and ended up striking Johnson in the arm.  Johnson lost a large quantity of blood and required hospitalization.  Because Johnson was shooting at such close range, the shots could easily have been fatal.

8

B. **Character and History of the Defendant**

Richardson was previously arrested and served jail time for possession of a firearm without a permit—charges relating to an incident in which Richardson ran from police officers and threw his firearm over a fence while running away. PSR ¶ 56. After serving jail time for that offense, Richardson was released from custody on January 29, 2015 to commence a three-year term of probation. PSR ¶ 56. He committed the instant offense a year and a half later. There is no doubt that Richardson's difficult upbringing and the issues with his family played some role in pushing him into criminal activity, but that background does not excuse his decision to engage in armed robbery, while on probation for illegal gun possession. Nor is the fact that Richardson was purportedly drunk and high on ecstasy pills an excuse for what he did. Richardson did not himself fire the gun, but he carried it and used it to smash Figueroa in the face in furtherance of the robbery. Richardson's instant conduct and criminal history warrant the imposition of a significant term of imprisonment.

C. **General Deterrence**

Another key factor in this case is general deterrence. *See United States v. Cavera*, 550 F.3d 180, 195-96 (2d Cir. 2008) (affirming upwardly variant sentence because "deterrence provides an independently sufficient justification for [the court's] variation from the Guidelines.") The type of conduct in which Richardson engaged is extremely dangerous, not only to the two victims but also to innocent bystanders. Every year in New Haven and other cities around the state and country innocent bystanders are wounded or killed by gun violence. Vasquez was severely wounded and was lucky that his arm blocked the bullet from hitting his face. Shooting at victims during a robbery in the middle of the street in a residential neighborhood cannot be tolerated. If individuals know that they will face a significant term of

imprisonment if they choose to illegally possess and use firearms, they may be less likely to engage in such activities.

D. **Specific Deterrence**

There is also a need here for specific deterrence. Richardson was previously convicted of marijuana possession and possession of a pistol without a permit. He committed the instant offense while on state probation a year and half after being released from custody. Richardson's conduct does not demonstrate an awareness that what he was doing was wrong or any indication that when he is released, he will not immediately return to the same type of behavior. A lengthy sentence here is thus necessary to reflect the seriousness of the offense, to deter future criminal conduct and to protect the public.

### III. CONCLUSION

For the reasons stated above, the Government respectfully asks the Court to adopt the factual findings in the Presentence Report and to impose a sentence within the guidelines range of 123 months.

Respectfully submitted,

JOHN H. DURHAM
UNITED STATES ATTORNEY

/s/ *Jocelyn Courtney Kaoutzanis*
JOCELYN COURTNEY KAOUTZANIS
FEDERAL BAR NO. ct30426
PETER D. MARKLE
ASSISTANT UNITED STATES ATTORNEYS
157 CHURCH STREET; 23rd FLOOR
NEW HAVEN, CT 06510
203-821-3700

<u>C E R T I F I C A T I O N</u>

  I hereby certify that on July 9, 2018, the foregoing Sentencing Memorandum was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

        /s/ *Jocelyn Courtney Kaoutzanis*
        JOCELYN COURTNEY KAOUTZANIS
        ASSISTANT UNITED STATES ATTORNEY